**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MICHAEL J. DIGGS,**

                    **Plaintiff,**          **1:14-cv-244**
                                          **(GLS/CFH)**

     **v.**

**NIAGARA MOHAWK POWER**
**CORPORATION,**

                    **Defendant.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Office of James D. Hartt | JAMES D. HARTT, ESQ. |
| 70 Linden Oaks | |
| 3rd Floor | |
| Rochester, NY 14625 | |
| | |
| **FOR THE DEFENDANT:** | |
| Bond, Schoeneck Law Firm | ROBERT A. LABERGE, ESQ. |
| One Lincoln Center | KSENIYA PREMO, ESQ. |
| Syracuse, NY 13202 | |

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Michael J. Diggs commenced this action against defendant

Niagara Mohawk Power Corporation, alleging employment discrimination on the basis of race under Title VII of the Civil Rights Act of 1964,[1] and age discrimination under the Age Discrimination in Employment Act (ADEA).[2] (Compl., Dkt. No. 1.)  Pending before the court is Niagara Mohawk's motion for summary judgment.  (Dkt. No. 21.)  For the reasons that follow, the motion is granted.

## II. **Background**[3]

Diggs, an African-American male over the age of forty, was employed by Niagara Mohawk as a gas mechanic, prior to his discharge in January 2013.  (Def.'s Statement of Material Facts (SMF) ¶¶ 1, 18, Dkt. No. 21, Attach. 14; Pl.'s SMF ¶ 22, Dkt. No. 26 at 4-7.)  On December 20, 2012, Diggs was working at a jobsite in Albany, New York, when he left in a Niagara Mohawk backhoe and drove to his personal garage located on Third Street in Albany.  (Def.'s SMF ¶ 7; Pl.'s SMF ¶ 7; Dkt. No. 21, Attach. 13 at 21-22, 27.)  While at his garage, Diggs used the backhoe to try to break up a tree stump in his yard.  (Def.'s SMF ¶ 7; Dkt. No. 21, Attach. 13

---

[1] *See* 42 U.S.C. §§ 2000e-2000e-17.

[2] *See* 29 U.S.C. §§ 621-634.

[3] Unless otherwise noted, the facts are not in dispute.

at 27-28.)  Diggs then drove the backhoe to his home on Pennsylvania Avenue in Albany, ate lunch, and, finally, returned the backhoe to a Niagara Mohawk facility in Glenmont, New York, where his personal vehicle was parked.  (Dkt. No. 21 at 21-22, 28.)  That day, Niagara Mohawk received a customer complaint, advising that Diggs was at his personal property with a Niagara Mohawk backhoe during the workday.  (Def.'s SMF ¶ 8.)

As a result of the complaint, Scott Ackermann, a Niagara Mohawk Gas Operations manager, convened an investigatory meeting attended by Diggs and Diggs' union representative.  (*Id.* ¶ 9; Dkt. No. 21, Attach. 11 ¶¶ 1, 5.)  When questioned, Diggs stated that he used the backhoe as transportation to and from his home, but failed to "elaborate on the fact that [he] used the backhoe at his garage," and denied that he used the equipment for "personal gain."  (Def.'s SMF ¶ 10; Pl.'s SMF ¶ 10, Dkt. No. 21, Attach. 13 at 31-32.)  Subsequently, the complaining customer submitted photographs of Diggs operating the backhoe in the yard of his garage.  (Def.'s SMF ¶ 11; Dkt. No. 21, Attach. 5.)  Thereafter, a second investigatory meeting was conducted on January 8, 2013.  (Def.'s SMF ¶ 12.)  This meeting was attended by Diggs and his union representative,

Ackermann, Labor Relations Manager Frank DeMauro, and Gas Operations Director Bryan Buck. (Dkt. No. 21, Attach. 1 ¶ 16.) Initially, Diggs repeated his claims that he had used the backhoe for transportation purposes only. (Def.'s SMF ¶ 13.) However, once confronted with the complaining customer's photographs, Diggs acknowledged using the backhoe in his yard to try to remove a tree stump. (*Id.* ¶ 14.)

Niagara Mohawk "maintains a uniform set of Standards of Ethical Business Conduct, entitled 'Doing the Right Thing.'" (*Id.* ¶ 2.) These standards of conduct prohibit employees from using Niagara Mohawk equipment for personal reasons, require employees to cooperate fully with internal investigations, and provide that employees who refuse to cooperate in good faith or obstruct such investigations will be subject to disciplinary actions, up to and including dismissal. (*Id.* ¶ 3; Dkt. No. 22 at 9; Dkt. No. 23 at 9.) Further, the Gas Operations Maintenance and Construction Department of Niagara Mohawk maintains a set of policies to which employees, such as Diggs, must adhere. (Def.'s SMF ¶ 5.) These policies provide, among other things, that Niagara Mohawk vehicles should be used only for company business and for transporting company employees or contractors, and Niagara Mohawk tools should be used only

for company purposes.  (*Id.*; Dkt. No. 21, Attach. 3 at 9, 11.)  These

policies also specify that failure to follow the "Doing the Right Thing"

standards of conduct may result in disciplinary action, up to and including

termination.  (Def.'s SMF ¶ 5; Dkt. No. 21, Attach. 3 at 13.)  Diggs received

a copy of both of these sets of company guidelines and was trained on

them.  (Def.'s SMF ¶¶ 4, 6; Dkt. No. 21, Attach. 13 at 34-36, 43.)

Nevertheless, Diggs contends that, although he attended a class where the

prohibition on the use of company equipment for "personal gain" was

discussed, it was "not fully explained."  (Pl.'s SMF ¶¶ 4, 6; Dkt. No. 26,

Attach. 5 at 3.)  On January 8, 2013, after Diggs admitted using the

backhoe in his yard, DeMauro informed Diggs that he was terminated for

violating the "Doing the Right Thing" standards of conduct and Gas

Operations policies on December 20, 2012, and for lying about his

misconduct during the subsequent investigatory meetings.  (Def.'s SMF

¶ 16.)  The explanation for his termination was also memorialized in a

January 16, 2013 memorandum, written by Buck.  (*Id.* ¶ 17; Dkt. No. 21,

Attach. 10.)

    Diggs thereafter challenged his termination through a grievance and

a two-day hearing before a neutral arbitrator appointed by the American

Arbitration Association, pursuant to the parties collective bargaining agreement (CBA).  (Def's SMF ¶ 23; Dkt. No. 21, Attach. 8 at 2.)  At the arbitration hearing, Diggs was represented by counsel, testified, and was permitted to examine and cross-examine other witnesses, and submit documentary evidence and a post hearing brief.  (Def's SMF ¶ 23.)  The issue Diggs raised before the arbitrator was "whether or not the penalty (termination) imposed upon [him] was for just cause."  (Dkt. No. 21, Attach. 8 at 8.)  Diggs claimed that he was treated more severely than several other Niagara Mohawk employees who committed similar, or even more egregious conduct.  (*Id.* at 7-8.)  Specifically, Diggs contended that Robert Bain, Mark Walker, Roger Contento, and Curtis Bailey were not discharged after violating Niagara Mohawk's policy prohibiting the utilization of company equipment and vehicles for personal reasons.  (*Id.*; Dkt. No. 21, Attach. 1 ¶ 27.)  Ultimately, the arbitrator upheld Diggs' termination, finding that Diggs was terminated for violating Niagara Mohawk policies, including those prohibiting personal use of Niagara Mohawk property and by failing to be truthful in the investigatory meetings.  (Def's SMF ¶ 23; Dkt. No. 21, Attach. 8.)  The arbitrator concluded that Diggs' "dishonesty and evasive attitude at investigatory meetings with management distinguished his case

6

from those of Bain, Walker, Contento, or Bailey." (Dkt. No. 21, Attach. 8 at

17.) Subsequently, Diggs commenced this action with the filing of a

complaint on March 6, 2014. (Compl.) Following joinder of issue, (Dkt.

No. 4), and the close of discovery, Niagara Mohawk filed the now-pending

motion for summary judgment, (Dkt. No. 21).

### III. **Standard of Review**

The standard of review pursuant to Fed. R. Civ. P. 56 is well

established and will not be repeated here. For a full discussion of the

standard, the court refers the parties to its decision in *Wagner v. Swarts*,

827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v.*

*Sprague*, 489 F. App'x 500 (2d Cir. 2012).

### IV. **Discussion**

### A. **Race Discrimination**

Turning to the merits of Diggs' race discrimination claim, Niagara

Mohawk argues that Diggs was terminated for a legitimate, non-

discriminatory reason — namely, his violation of the company's standards

of conduct — and that he cannot establish a prima facie case of

employment discrimination nor demonstrate that the stated reasons for his

dismissal are a pretext for discrimination. (Dkt. No. 21, Attach. 15 at 15-

25.)  In response, Diggs states that the disparate treatment of similarly situated Caucasian employees is "direct evidence" that could lead a jury to conclude that his violation of company policy was not the sole reason for his termination, and that he was, in fact, terminated for discriminatory reasons.  (Dkt. No. 26 at 9.)  The court agrees with Niagara Mohawk.

Under Title VII, it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Discrimination claims are analyzed under the *McDonnell Douglas* burden-shifting rules, which place upon the plaintiff the initial burden of making out a prima facie case of discrimination.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  To satisfy this initial burden, the plaintiff "'must show: (1) he belonged to a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.'"  *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (quoting *Holcomb v. Iona Coll.*, 521 F.3d 130, 138

(2d Cir. 2008)).  Generally, a plaintiff's burden of establishing a prima facie case of employment discrimination is minimal.  *See Collins v. N.Y.C. Trans. Auth.*, 305 F.3d 113, 118 (2d Cir. 2002).

"A plaintiff's establishment of a *prima facie* case gives rise to a presumption of unlawful discrimination that shifts the burden of production to the defendant, who must proffer a legitimate, nondiscriminatory reason for the challenged employment action."  *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005) (internal quotation marks and citations omitted). If the defendant comes forward with a legitimate, nondiscriminatory reason for the challenged employment action, the presumption of discrimination drops out of the analysis, and the defendant "will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination."  *James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000).

Ultimately, once the burden shifts back to the plaintiff, he must show, "without the benefit of the presumption, that the employer's determination was in fact the result of racial discrimination."  *Holcomb*, 521 F.3d at 138. The plaintiff must demonstrate "by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons,

but were a pretext for discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). As further explained by the Supreme Court, to demonstrate pretext, a plaintiff must show "*both* that the [employer's proffered] reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993); *see Fisher v. Vassar Coll.*, 70 F.3d 1420, 1433 (2d Cir. 1995), *reheard en banc on other grounds*, 114 F.3d 1332 (2d Cir.1997), *abrogated on other grounds* by *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000). However, conclusory allegations of discrimination are insufficient to defeat a motion for summary judgment. *See Holcomb*, 521 F.3d at 137; *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997).

With respect to Diggs' burden to establish a prima facie case, it is undisputed that, "as an African-American, [he] is a member of a protected class, and because he was terminated, he was subjected to an adverse employment action." *Simpson v. N.Y.S. Dep't of Civil Serv.*, No. 02-CV-1216, 2005 WL 545349, at *10 (N.D.N.Y. Mar. 1, 2005) (internal citations omitted), *aff'd*,166 F. App'x 499 (2d Cir. 2006). Nor do the parties dispute that Diggs was qualified for the position he held. (*See generally* Dkt. No. 21, Attach. 15.) Thus, the question that remains is whether Diggs

can show that the circumstances surrounding his termination give rise to an inference of discrimination.  *See Collins*, 305 F.3d at 118.  "'An inference of discrimination may arise if a plaintiff can show that [ ]he was treated differently than similarly situated employees of a different race[.]'" *Simpson*, 2005 WL 545349, at *11 (quoting *Jackson v. Norwalk Bd. of Educ.*, No. Civ.3:02CV1777, 2004 WL 2472223, at *5 (D. Conn. Sept. 9, 2004)); *see Humphreys v. Cablevision Sys. Corp.*, 553 F. App'x 13, 14-15 (2d Cir. 2014) ("[A] showing that the employer treated plaintiff less favorably than a similarly situated employee outside his protected group . . . is a recognized method of raising an inference of discrimination for purposes of making out a *prima facie* case." (internal quotation marks and citation omitted)).  When considering whether a plaintiff has raised an inference of discrimination by showing that he was subjected to disparate treatment, the plaintiff must show that he was "'similarly situated in all material respects'" to the individuals with whom he seeks to compare himself.  *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)).

In his complaint, Diggs alleges that three "younger white employees

were given far less discipline than [Diggs] for similar conduct." (Compl. ¶¶ 18-21), and, indeed, he has presented some evidence that three other employees — Bain, Walker, and Contento — were not discharged from their employment for their personal use of Niagara Mohawk equipment, (Dkt. No. 26, Attachs. 1-3; Dkt. No. 21, Attach. 1 ¶ 27).[4] Despite this evidence, Niagara Mohawk argues that Diggs cannot establish a prima facie case of employment discrimination, because he has not shown that the arbitrator's decision that his termination was for just cause was wrong as a matter of fact, or that the impartiality of the arbitration proceeding was somehow compromised. (Dkt. No. 21, Attach 15 at 13-15.) In making this argument, Niagara Mohawk relies on the Second Circuit's decision in *Collins*, 305 F.3d 113. In that case, the plaintiff filed a grievance against his employer, pursuant to a CBA, claiming that he was discriminatorily discharged. *See* 305 F.3d at 117. An arbitration was held in which the plaintiff was represented by his union. *See id.* The arbitration board conducted three days of hearings, and subsequently "issued a reasoned fourteen-page opinion," concluding that the plaintiff should be discharged

_____

[4] While Niagara Mohawk appears to agree that these three employees are Caucasian, they contend, and Diggs does not dispute, that such employees are actually older than, or approximately the same age as Diggs. (Def.'s SMF ¶¶ 18, 20; Dkt No. 21, Attach. 15 at 19.)

12

for his conduct.  *Id.* at 119.  The plaintiff then filed a Title VII claim.  *See id.* at 117.  The Second Circuit, in affirming the grant of summary judgment in favor of the employer, held that the arbitrator's decision was "highly probative of the absence of discriminatory intent in [the] termination."  *Id.* at 119.  Therefore, the Court concluded, when the decision of an arbitrator who has the final power to discipline or discharge an employee "follows an evidentiary hearing and is based on substantial evidence, the Title VII plaintiff, to survive a motion for summary judgment, must present strong evidence that the decision was wrong as a matter of fact . . . or that the impartiality of the proceeding was somehow compromised."  *Id.* at 119.

Diggs correctly points out that a negative arbitration decision rendered under a CBA does not preclude a Title VII action by a discharged employee.  (Dkt. No. 26 at 11); *see Collins*, 305 F.3d at 119.  However, he fails to present any evidence "that the decision [of the arbitrator] was wrong as a matter of fact—e.g. new evidence not before the tribunal—or that the impartiality of the proceeding was somehow compromised."  *Collins*, 305 F.3d at 119.  He simply argues that, because the arbitration did not focus upon the discriminatory intent of Niagara Mohawk, and, instead, focused upon whether Diggs engaged in the alleged misconduct, "the notion that

the issues are somehow precluded or that [his] burden is higher . . . is inaccurate." (Dkt. No. 26 at 13.) Contrary to Diggs' argument, however, courts in this Circuit have held that whether discrimination claims were made before the arbitrator is irrelevant, because "'[t]here is no suggestion in *Collins* that the plaintiff had presented his evidence of discriminatory . . . intent to the arbitrator.'" *Brenner v. City of N.Y. Dep't of Educ.*, No. 14 Civ. 3559, 2015 WL 5475628, at *6 (E.D.N.Y. Sept. 17, 2015) (quoting *Gallimore-Wright v. Long Island R. Co.*, 354 F. Supp. 2d 478, 491-92 (S.D.N.Y. 2005)); *see Simpson*, 2005 WL 545349, at *16 ("Under *Collins* and its progeny, failure to address the discrimination issue in an arbitration does not diminish the impact of that arbitration on a subsequent discrimination action." (citations omitted)).

Here, the arbitrator's decision was based on evidence provided by both parties during a two-day hearing, at which Diggs was represented by counsel, and rendered in a thorough eighteen-page opinion. (Def's SMF ¶ 23; Dkt. No. 21, Attach. 8.) Diggs has not offered any new evidence that was not before the arbitrator, nor has he offered any evidence or argument that would impugn the impartiality of the arbitrator. The absence of such evidence "effectively undermines [Diggs'] ability to make out a *prima facie*

case of discrimination." *See Higgs v. Columbia Univ.*, No. 05 Civ. 2642, 2009 WL 77880, at *14 (S.D.N.Y. Jan. 6, 2009). Diggs' argument that his proffer of evidence of "three other similarly situated Caucasian employees who engaged in similar, arguably more serious misconduct" than Diggs, but who were not terminated by Niagara Mohawk, is sufficient to overcome any higher burden of proof he faces as a result of the arbitrator's decision is also unavailing. (Dkt. No. 26 at 13.) First, this evidence was before the arbitrator. (Dkt. No. 21, Attach. 8 at 12-13.) Moreover, the court agrees with Niagra Mohawk that the employees Diggs compares himself to are not similarly situated to him in all material respects. (Dkt. No. 21, Attach. 15 at 20-22.)

To determine whether two employees are similarly situated, the court must consider "(1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness." *Graham*, 230 F.3d at 40. Niagara Mohawk first argues that the three employees Diggs compares himself to were not similarly situated because they were not disciplined by Buck, DeMauro, or Ackerman, the decision makers in Diggs' firing. (Dkt. No. 21, Attach. 15 at

21-22.)  It has supported this assertion with affidavits from Buck, DeMauro, and Ackerman who indicate that the three comparator employees did not work in the areas in which they had responsibilities at the time the employees were disciplined, and, therefore, DeMauro, Buck, and Ackerman "were not consulted or involved" in any decisions to discipline those employees.  (Dkt. No. 21, Attach. 1 ¶ 28; Dkt. No. 21, Attach. 9 ¶ 11; Dkt. No. 21, Attach. 11 ¶ 15.)  "In the Second Circuit, whether or not co-employees report to the same supervisor is an important factor in determining whether two employees are subject to the same workplace standards for purposes of finding them similarly situated."  *Conway v. Microsoft Corp.*, 414 F. Supp. 2d 450, 465-66 (S.D.N.Y. 2006) (collecting cases); *see Gannon v. United Parcel Serv.*, 529 F. App'x 102, 104 (2d Cir. 2013) ("[W]e conclude the district court correctly found [the plaintiff] was not similarly situated as a matter of law to the three employees who worked in a different division and were disciplined by a different division manager."); *McDowell v. T-Mobile USA, Inc.*, No. CV-04-2909, 2007 WL 2816194, at *9 (E.D.N.Y. Sept. 26, 2007) (concluding that employees who reported to a different supervisor than plaintiff were not similarly situated, despite the fact that they were subject to the same workplace rules), *aff'd*,

307 F. App'x 531 (2d Cir. 2009).

Further, Niagara Mohawk argues the proposed comparators are inapposite because Diggs cannot show that they lied during Niagara Mohawk's investigations into their alleged misconduct.  (Dkt. No. 21, Attach. 15 at 21.)  Again, Buck, DeMauro, and Ackerman indicate in their affidavits that the three comparators "did not lie about their conduct during . . . investigatory meetings and instead admitted to their misconduct and apologized for it."  (Dkt. No. 21, Attach. 1 ¶ 27; Dkt. No. 21, Attach. 9 ¶ 10; Dkt. No. 21, Attach. 11 ¶ 14.)  Courts have routinely held that an employee who lies about his misconduct is not similarly situated in all material respects to comparator employees who did not lie about their misconduct. *See, e.g.*, *Anderson v. Nat'l Grid, PLC*, 93 F. Supp. 3d 120, 143-44 (E.D.N.Y. 2015) ("The fact that [a co-worker] cooperated fully with the investigation, whereas plaintiff did not, is reason enough to hold that plaintiff and [the co-worker] were not similarly situated in all material respects."); *Rodriguez v. Long Island Am. Water, Inc.*, No. 12-cv-2970, 2014 WL 4805021, at *9 (E.D.N.Y. Sept. 26, 2014) (collecting cases and noting that "courts have granted summary judgment for the employer in circumstances . . . where the comparator employee (unlike the plaintiff) did

17

not lie about the misconduct when confronted"); *Roggenbach v. Touro Coll. of Osteopathic Med.*, 7 F. Supp. 3d 338, 345 (S.D.N.Y. 2014) (holding that a student who did not cooperate with a college's disciplinary process and was accused of dishonesty was not similarly situated in all material respects to comparator students); *Schweit v. City of New York*, No. 04-CV-5462, 2007 WL 1133440, at *6 (E.D.N.Y. Apr. 17, 2007) ("[W]ith respect to the unidentified officers, [the plaintiff] has not shown that any of them made false or misleading statements in connection with the investigation; consequently, [the plaintiff] has not demonstrated that he and any other officers . . . were similarly situated in all material respects.").

Diggs offers almost no response to Niagara Mohawk's arguments regarding whether the comparator employees are similarly situated. He merely states that he "made clear in his deposition testimony that the three Caucasian employees . . . were []similarly situated employees." (Dkt. No. 26 at 14.) Further, he asserts that one of the comparator employees worked in the Gas Department of Niagara Mohawk, as did Diggs, while the other two comparator employees worked in the Electrical Department. (*Id.*) The fact that two of the three comparator employees worked in a different department than Diggs supports Niagara Mohawk's argument that these

two employees were not similarly situated to Diggs in all material respects. *See Gannon*, 529 F. App'x at 104. Ultimately, because the arbitrator's decision that there was just cause for Diggs' termination is highly probative of Niagara Mohawk's non-discriminatory reason for terminating Diggs, *see Collins*, 305 F.3d at 119, and because Diggs has not offered sufficient evidence of disparate treatment, he has failed to establish an inference of discriminatory intent to satisfy the fourth prong of his prima facie case. *See Simpson*, 2005 WL 545349, at *17 ("Plaintiff's lack of disparate treatment proof, in combination with the Hearing Officer's adverse decision, convinces the court that plaintiff has not shown, as he must, that his termination arose under circumstances giving rise to an inference of race discrimination."). Accordingly, Niagara Mohawk's motion for summary judgment on Diggs' race discrimination claim is granted.

## B. <u>Age Discrimination</u>

Claims of employment discrimination brought under the ADEA are subject to a largely identical analytical framework as those brought under title VII. *See Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009) (describing the framework for age discrimination claims under the ADEA, and gender discrimination claims under Title VII), *superseded by statute on*

*other grounds*, Local Civil Rights Restoration Act of 2005, N.Y.C. Local L. No. 85*, as recognized in Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).[5]  Again, with respect to Diggs' burden to establish a prima facie case, it is undisputed that Diggs meets the first three elements of a discrimination claim.[6]  *See id.*  With respect to the forth element — whether the circumstances surrounding his termination give rise to an inference of discrimination — Diggs argues that his "discharge occurred under circumstances giving rise to an inference of age discrimination insofar as [Diggs] was an aged employee who was terminated under a pretext of misconduct and when no other viable reason existed to terminate his employment."  (Dkt. No. 26 at 11.)  Further, he contends that Niagara Mohawk "had obtained the best and most productive years out of [him], and that given his increasing age, [Niagara Mohawk] sought to dishonestly justify its termination of [him]."  (*Id.*)  The only

---

[5] However, the court notes that "a claimant bringing suit under the ADEA must demonstrate that age was not just a motivating factor behind the adverse action, but rather the 'but-for' cause of it.  Title VII, on the other hand, . . . authorize[s] a 'mixed motive' discrimination claim."  *Leibowitz*, 584 F.3d at 498 n.2 (citations omitted); *see Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015).

[6] With respect to the first element, membership in a protected class, Diggs was fifty-one years old at the time of his discharge, (Def.'s SMF ¶ 18), and the protections of the ADEA are available "to individuals who are at least [forty] years of age."  29 U.S.C. § 631(a).

evidence Diggs cites in support of this contention is an undated, unsigned, and unsworn statement which sets forth his belief that Niagara Mohawk "feels that because of [his] age they have gotten the best years out of [him]. The company may also feel [he is] a liability because of [his] health, and if they can push [him] out now they would save money on [his] retirement package." (Dkt. No. 26, Attach 4. at 2.)

As Niagara Mohawk points out, this document is inadmissible. (Dkt. No. 27 at 1 n.1); *see Riehl v. Martin*, No. 9:13-cv-439, 2014 WL 1289601, at *6 (N.D.N.Y. Mar. 31, 2014) ("[U]nsworn statements are generally inadmissible in opposition to a motion for summary judgment."). Moreover, these allegations are conclusory and without evidentiary support. *See Brenner*, 2015 WL 5475628, at *5 ("'[C]onclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment.'" (quoting *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 151 (2d Cir. 2007))); *see also Holcomb*, 521 F.3d at 137 ("Even in the discrimination context . . . a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment."). Notably, the rationale of *Collins* applies to Diggs' age discrimination claims as well. *See Brenner*, 2015 WL 5475628, at *6 (applying *Collins* to ADEA claims). Thus, the arbitrator's decision is highly

probative of the absence of discriminatory intent in Diggs' termination. *See Collins*, 305 F.3d at 119. Furthermore, Buck, Ackerman, and DeMauro are all approximately the same age as Diggs. (Def.'s SMF ¶¶ 18-19); *see Chan v. Donahoe*, 63 F. Supp. 3d 271, 294, 298 (E.D.N.Y. 2014) ("An inference against discrimination exists where the person who participated in the allegedly adverse decision is also a member of the same protected class." (internal quotation marks and citation omitted)); *Marlow v. Office of Court Admin.*, 820 F. Supp. 753, 757 (S.D.N.Y. 1993) ("[I]f [the] decisionmaker is in [the] same protected class as plaintiff, claims of discrimination become less plausible." (citation omitted)), *aff'd*, 22 F.3d 1091 (2d Cir. 1994), *aff'd*, 513 U.S. 897 (1994).

Based on the foregoing, Diggs has not linked his termination to circumstances giving rise to an inference of age discrimination. Niagara Mohawk's motion for summary judgment regarding Diggs' age discrimination claim is therefore also granted.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Niagara Mohawk's motion for summary judgment (Dkt. No. 21) is **GRANTED**; and it is further

**ORDERED** that the complaint (Dkt. No. 1) is **DISMISSED**; and it is further;

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

April 14, 2016
Albany, New York

Gary L. Sharpe
U.S. District Judge